Charles L. Roberts (Utah Bar #5137)
**WASATCH-IP, A PROFESSIONAL CORP.**
2825 E. Cottonwood Parkway, Suite 500
Salt Lake City, UT  84121
Telephone: (801) 292-5300
Facsimile: (801) 506-6699
Email: croberts@wasatch-ip.com

*Attorneys for Plaintiff, Definitive Holdings, LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DEFINITIVE HOLDINGS, LLC, a Utah limited liability company,<br><br>            Plaintiff,<br><br>vs.<br><br>POWERTEQ LLC, a Kentucky limited liability company,<br><br>            Defendant. | **COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**(Jury Trial Demanded)**<br><br>Case No: 2:18-cv-00844-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Definitive Holdings, LLC ("Definitive Holdings") through its legal counsel, complains against defendant Powerteq LLC, as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement pursuant to 35 U.S.C. Section 271.

### PARTIES

2.      Definitive Holdings is a Utah limited liability company with a principal place of business in Draper, Utah.

3.      Upon information and belief, defendant Powerteq is a Delaware limited liability company with a principal place of business at 1080 So. Depot Drive, Ogden, Utah 84404.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States of America, Title 35, United States Code.  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Upon information and belief, Powerteq is engaged in the business of manufacturing, selling, offering for sale, and/or importing gasoline and diesel tuning systems under the DiabloSport, Superchips, and Edge brands, including, without limitation, the DiabloSport Predator 2, the DiabloSport inTune i3, the DiabloSport Trinity T2 EX, the DiabloSport Trinity T2 Platinum, the DiabloSport Trinity T2 MX (upgraded), the Superchips Dashpaq, the Superchips Flashpaq, the Superchips FlashCal for Truck, the Superchips FlashCal for Jeep®, the Superchips TrailDash2, the Edge EVOHT2, the Edge Evolution CS2, the Edge Evolution CTS2, the Edge Juice w/Attitude CS2, the Edge Evo Programmer, the Edge Power Stroke EVOLUTION, the Edge Insight Pro (collectively, the "Accused Products"), in the United States, including in this District.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because Powerteq has committed acts of infringement and has a regular and established place of business in this District.

7.      Powerteq is subject to this court's jurisdiction because it has a regular and established place of business in this District.

## THE PATENT IN SUIT

8.      In early 2000, James E. Conforti, Jr. and Roderick A. Barman developed a tool for modifying the software that resides in the electronic control unit of automobiles. Their product was specifically intended for BMWs and allowed the user to change a number of operating parameters within the vehicle, such as the top speed limit, the rev limit, the throttle response, and the power curve. The tool was encased in a small plastic housing and was configured to plug into a vehicle's on-board diagnostic port (OBD).  They marketed the tool as the SHARK INJECTOR and began selling it in June of 2000.

9.      Mr. Conforti's work as an engine programmer, or "tuner," had previously caught the attention of the *New York Times*, which published an article in May of 2000 entitled "More Speed? Power? Now Drivers Can Have It Their Way," in which Mr. Conforti's pioneering work in this area was reported and Conforti and Barman's patent application was referenced.  A copy of the *New York Times* article is attached as Exhibit A.

10.     Barman and Conforti filed a provisional patent application on their Shark Injector invention in March of 2001 and followed up that filing with a utility application in March of 2002.  On June 4, 2013, the Barman and Conforti patent application was issued as U.S. Patent No. 8,458,689 by the United States Patent and Trademark Office entitled "Method and Apparatus for Reprogramming Engine Controllers" (hereafter "the patent in suit" or "the '689 patent.").  A copy of the '689 patent is attached as Exhibit B.

11.     Definitive Holdings is the assignee of all rights to the '689 patent, including the exclusive right to sue for and recover all past, present and future damages for infringement of the '689 patent.

## Count I – Direct Infringement of the '689 Patent

12.     Definitive Holdings restates and incorporates herein each of the paragraphs above as if alleged herein.

13.     Upon information and belief, Powerteq has made, used, sold, offered for sale, and/or imported the Accused Products into the United States, including within this District.

14.     Powerteq has directly infringed at least Claim 27 of the '689 patent either literally or under the doctrine of equivalents by manufacturing, selling, offering for sale, and/or importing the Accused Products, in violation of 35 U.S.C. § 271(a).

15.     Since at least as early as October of 2017, Definitive Holdings has been in compliance with the marking provisions of 35 U.S.C. §287(a).

16.     Claim 27 of the '689 patent recites:

An apparatus for upgrading software in an engine controller, the apparatus comprising:

an interface configured to communicate data to and from the engine controller;

a memory, which stores information identifying a plurality of software versions and one or more data blocks of upgraded software associated with each of the plurality of software versions; and

a processor in communication with the memory and the interface, the processor configured to:

determine a version of current software in the engine controller and request from the engine controller and store in the memory a first identification number from the engine controller;

identify one or more data blocks of upgraded software associated with the version of the current software; and

replace one or more data blocks of the current software with the one or more data blocks of upgraded software to create at the apparatus a modified version of the current software, the one or more data blocks constituting less than all of the modified version of current software by:

obtaining an image of the current software from the engine controller and storing that image in the memory;

while retaining the obtained image of the current software in the memory for restoration, forming a data stream and downloading the data stream into the engine controller in order to replace the current software with the modified version of the current software, the data stream comprising the modified version of the current software, the data stream obtained by modifying the image of the current software at the apparatus by replacing one or more data blocks of the image with the one or more data blocks of upgraded software[,] the data stream including at least some unmodified data blocks of the image; and

monitor status information while replacing the one or more data blocks of the current software and, if an interruption occurs, use the status information to resume replacing the one or more data blocks of the current software.

17.     By way of example, and not limitation, the Accused Products' direct infringement of Claim 27 of the '689 Patent is described below, with reference to the DiabloSport Predator 2 device.

18.     The Accused Devices, including the DiabloSport Predator 2 device, are apparatus for upgrading software in an engine controller.

19.     The Accused Devices, including the DiabloSport Predator 2 device, include an interface configured to communicate data to and from the engine controller.  For the DiabloSport Predator 2 device, this interface is illustrated as follows on page 10 of the Predator 2 User Manual (attached as Exhibit C):



20.     Upon information and belief, the Accused Devices, including the DiabloSport Predator 2 device, include a memory, which stores information identifying a plurality of software versions and one or more data blocks of upgraded software associated with each of the plurality of software versions.  The Predator 2 User Manual describes saving stock files and installing the "tune" file.



(Predator 2 User Manual, p. 11)  Upon information and belief, such stock files and "tune" files are saved in memory of the Predator 2 device.

21.     Upon information and belief, the Accused Devices, including the DiabloSport Predator 2 device, include a processor in communication with the memory and the interface. Upon information and belief, such a processor is necessary to save data to and read data from the memory in the device.

22.     The Accused Devices, including the DiabloSport Predator 2 device, include a processor that is configured to determine a version of current software in the engine controller and request from the engine controller and store in the memory a first identification number from the engine controller.  Upon information and belief, it is necessary to determine the version of current software in the engine controller to ensure that the device has the necessary calibration files to program the vehicle, as referenced below for the DiabloSport Predator 2 device:

**My programmer shows a 'vehicle calibration not on file' status.**

✓The Predator is loaded with the latest databases meant to provide extremely broad vehicle coverage. 'Vehicle calibration not on file' status occurs when programmer does not have the necessary calibration files to program a vehicle. Update your programmer using the Ignition update software. If your calibration is available it will be downloaded to your programmer for immediate use. If your calibration is not available, your calibration will be uploaded to Diablosport' R&D for tuning. You will receive an e-mail as soon as your calibration is available. Calibrations are usually available in 5 business days.

(Predator 2 User Manual, p. 32).

23.     The Accused Devices, including the DiabloSport Predator 2 device, include a processor that is configured to replace one or more data blocks of the current software with the one or more data blocks of upgraded software to create at the apparatus a modified version of the current software, the one or more data blocks constituting less than all of the modified version of current software by obtaining an image of the current software from the engine controller and storing that image in the memory.  The DiabloSport Predator 2 device indicates that the current software ("vehicle application") is stored in the memory of the device:



(Predator 2 User Manual, p. 11).

24.     The Accused Devices, including the DiabloSport Predator 2 device, include a processor that is configured to replace one or more data blocks of the current software with the one or more data blocks of upgraded software to create at the apparatus a modified version of the current software, the one or more data blocks constituting less than all of the modified version of current software while retaining the obtained image of the current software in the memory for restoration.  The DiabloSport Predator 2 includes instructions for returning the "vehicle to stock" which, upon information and belief, is only possible if the device stores the stock software in the memory for subsequent restoration;



(Predator 2 User Manual, p. 18).

25.     Upon information and belief, the Accused Devices, including the DiabloSport Predator 2 device, include a processor that is configured to replace one or more data blocks of the current software with the one or more data blocks of upgraded software to create at the apparatus a modified version of the current software, the one or more data blocks constituting

less than all of the modified version of current software by forming a data stream and

downloading the data stream into the engine controller in order to replace the current software

with the modified version of the current software, the data stream comprising the modified

version of the current software, the data stream obtained by modifying the image of the current

software at the apparatus by replacing one or more data blocks of the image with the one or more

data blocks of upgraded software[,] the data stream including at least some unmodified data

blocks of the image.  The Accused Devices, including the DiabloSport Predator 2, allow

modification of numerous parameters and works on many versions of engine software as

illustrated here:



(Predator 2 User Manual, p. 11).  Upon information and belief, the only way it could do this is by

using a data stream obtained by modifying the image of the current software at the apparatus by

replacing one or more data blocks of the image with the one or more data blocks of upgraded

software, the data stream including at least some unmodified data blocks of the image.

26.     Upon information and belief, the Accused Devices, including the DiabloSport

Predator 2 device, include a processor that is configured to monitor status information while

replacing the one or more data blocks of the current software and, if an interruption occurs, use

the status information to resume replacing the one or more data blocks of the current software.

Upon information and belief, the DiabloSport Predator 2 device monitors such status information while replacing the one or more data blocks of the current software and, if an interruption occurs, uses the status information to resume replacing the one or more data blocks of the current software. The following excerpt from the User Manual suggests this monitoring step:

**My programmer did not complete programming and went into recovery mode?**

✓ Predator programmers are designed with 'Recovery Mode' which means if, for any reason, the programming process does not finish, the programmer will automatically program your vehicle back to the factory stock settings.
It is necessary to follow the screen prompts, possibly requiring several 'Ignition On' and 'Ignition Off' sequences.
When recovery is complete your vehicle is at factory stock.

(Predator 2 User Manual, p. 31).

27.     Definitive Holdings has been damaged by Powerteq's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty for its sales of Accused Devices.

**Count II – Induced Infringement of the '689 Patent**

28.     Definitive Holdings restates and incorporates herein each of the paragraphs above as if alleged herein.

29.     Powerteq has induced infringement of the '689 Patent under 35 U.S.C. § 271(b) by, for example, inducing its customers to use the Accused Products in a manner that constitutes direct infringement of the '689 patent during the term of the '689 patent, at least by instructing its customers to perform a method of using the Accused Products that constitutes direct infringement of the '689 patent.

30.     The method of using the Accused Products, for example the method of use described in the DiabloSport Predator 2 User Manual (Exhibit C), infringes, either literally or

under the doctrine of equivalents, one or more claims of the '689 patent, including at least Claim 1.

31.    Claim 1 of the '689 patent recites:

A method for upgrading software in an engine controller, the method comprising:

placing an engine controller reprogramming apparatus in data communication with the engine controller and, at the engine controller reprogramming apparatus;

determining a version of current software in the engine controller and requesting from the engine controller and storing in the engine controller reprogramming apparatus a first identification number from the engine controller;

identifying one or more data blocks of upgraded software associated with the version of current software, the one or more data blocks constituting less than all of the version of current software; and

replacing one or more data blocks of the current software with the one or more data blocks of upgraded software;

wherein replacing the one or more data blocks of current software comprises:

uploading from the engine controller to the engine controller reprogramming apparatus an image of the current software and storing the image of the current software in a memory of the engine controller reprogramming apparatus;

at the engine controller reprogramming apparatus, creating a modified version of the current software at the engine controller reprogramming apparatus by replacing one or more data blocks of the image with the one or more data blocks of upgraded software and retaining at least some data blocks of the image in the modified version of the current software while retaining the

uploaded image of the current software in the memory for restoration and downloading a data stream from the engine controller reprogramming apparatus into the engine controller, the data stream comprising the modified version of the current software including the one or more data blocks of upgraded software; and

monitoring status information and, if an interruption occurs, using the status information to resume replacing the one or more data blocks of the current software.

32.     By way of example, and not as a limitation, the method of using the Accused Products constitutes direct infringement of Claim 1 of the '689 patent as described below.

33.     The method of using the Accused Products, including the DiabloSport Predator 2 device, is a method for upgrading software in an engine controller.

34.     The method of using the Accused Products, including the DiabloSport Predator 2 device, includes placing an engine controller reprogramming apparatus in data communication with the engine controller.  For the DiabloSport Predator 2 device, placing an engine controller reprogramming apparatus in data communication with the engine controller is illustrated as follows:



(Predator 2 User Manual, p. 10).

35.     The method of using the Accused Products, including the DiabloSport Predator 2 device, includes, at the engine controller reprogramming apparatus, determining a version of current software in the engine controller and requesting from the engine controller and storing in the engine controller reprogramming apparatus a first identification number from the engine controller.  Upon information and belief, determining a version of current software in the engine controller and requesting from the engine controller and storing in the engine controller reprogramming apparatus a first identification number from the engine controller is necessary to determine the version of current software in the engine controller to ensure that the device has the necessary calibration files to program the vehicle, as referenced below for the DiabloSport Predator 2 device:

**My programmer shows a 'vehicle calibration not on file' status.**

✓ The Predator is loaded with the latest databases meant to provide extremely broad vehicle coverage. 'Vehicle calibration not on file' status occurs when programmer does not have the necessary calibration files to program a vehicle. Update your programmer using the Ignition update software. If your calibration is available it will be downloaded to your programmer for immediate use. If your calibration is not available, your calibration will be uploaded to Diablosport' R&D for tuning. You will receive an e-mail as soon as your calibration is available. Calibrations are usually available in 5 business days.

(Predator 2 User Manual, p. 32).

36.     The method of using the Accused Products, including the DiabloSport Predator 2 device, includes, at the engine controller reprogramming apparatus, identifying one or more data blocks of upgraded software associated with the version of current software, the one or more data blocks constituting less than all of the version of current software.  Upon information and belief, in the DiabloSport Predator 2 device, the one or more data blocks of upgraded software

associated with the version of current software and which constitute less than all of the version of current software data blocks of upgraded software are the "calibration files" referenced below.

**My programmer shows a 'vehicle calibration not on file' status.**
✓The Predator is loaded with the latest databases meant to provide extremely broad vehicle coverage. 'Vehicle calibration not on file' status occurs when programmer does not have the necessary calibration files to program a vehicle. Update your programmer using the Ignition update software. If your calibration is available it will be downloaded to your programmer for immediate use. If your calibration is not available, your calibration will be uploaded to Diablosport' R&D for tuning. You will receive an e-mail as soon as your calibration is available. Calibrations are usually available in 5 business days.

(Predator 2 User Manual, p. 32).

37.    The method of using the Accused Products, including the DiabloSport Predator 2 device, includes replacing one or more data blocks of the current software with the one or more data blocks of upgraded software.

38.    The method of using the Accused Products, including the DiabloSport Predator 2 device, includes uploading from the engine controller to the engine controller reprogramming apparatus an image of the current software and storing the image of the current software in a memory of the engine controller reprogramming apparatus. The DiabloSport Predator 2 device indicates that the current software ("vehicle application") is stored in the memory of the device:



(Predator 2 User Manual, p. 11).

39.     Upon information and belief, the method of using the Accused Products, including the DiabloSport Predator 2 device, includes, at the engine controller reprogramming apparatus, creating a modified version of the current software at the engine controller reprogramming apparatus by replacing one or more data blocks of the image with the one or more data blocks of upgraded software and retaining at least some data blocks of the image in the modified version of the current software while retaining the uploaded image of the current software in the memory for restoration and downloading a data stream from the engine controller reprogramming apparatus into the engine controller, the data stream comprising the modified version of the current software including the one or more data blocks of upgraded software.  The Accused Devices, including the DiabloSport Predator 2, allow modification of numerous parameters and works on many versions of engine software as illustrated here:



(Predator 2 User Manual, p. 11).  Upon information and belief, the only way it could do this is by using a data stream obtained by creating a modified version of the current software at the engine controller reprogramming apparatus by replacing one or more data blocks of the image with the one or more data blocks of upgraded software and retaining at least some data blocks of the image in the modified version of the current software while retaining the uploaded image of the current software in the memory for restoration and downloading a data stream from the engine controller reprogramming apparatus into the engine controller, the data stream comprising the modified version of the current software including the one or more data blocks of upgraded software.

40.     Upon information and belief, the method of using the Accused Products, including the DiabloSport Predator 2 device, includes, monitoring status information and, if an interruption occurs, using the status information to resume replacing the one or more data blocks of the current software.  Upon information and belief, the DiabloSport Predator 2 device monitors status information and, if an interruption occurs, using the status information to resume replacing the one or more data blocks of the current software.  The following excerpt from the User Manual suggests this monitoring step:

**My programmer did not complete programming and went into recovery mode?**
> ✓Predator programmers are designed with 'Recovery Mode'
> which means if, for any reason, the programming process
> does not finish, the programmer will automatically program
> your vehicle back to the factory stock settings.
> It is necessary to follow the screen prompts, possibly
> requiring several 'Ignition On' and 'Ignition Off' sequences.
> When recovery is complete your vehicle is at factory stock.

(Predator 2 User Manual, p. 31).

41.     Therefore, by way of example, and not as a limitation, practicing the method of using the Accused Products as described at least in paragraphs 32 through 40 herein constitutes direct infringement of at least Claim 1 of the '689 patent under 35 U.S.C. § 271(a).

42.     Upon information and belief, Powerteq sells the Accused Products to its customers.

43.     Upon information and belief, Powerteq's customers practice the method of use of the Accused Products described and as instructed by Powerteq at least in paragraphs 32 through 40 herein.

44.     Upon information and belief, Powerteq's customers directly infringe at least Claim 1 of the '689 Patent by using the Accused Products as directed that they acquire from Powerteq.

45.     Upon information and belief, Powerteq had actual knowledge of the '689 patent prior to the filing of this Complaint. For example, on January 18, 2018, Powerteq was notified in writing of the existence of the '689 patent.

46.     Upon information and belief, Powerteq knew that its customers would infringe the '689 patent by using the Accused Products during the term of the '689 patent. For example, on information and belief, Powerteq provides a version of Exhibit C to its customers with each of

the Accused Products, which instructs the customer to perform a method of using the Accused

Product that would constitute direct infringement of at least Claim 1 of the '689 patent.

47.     Upon information and belief, Powerteq had the specific intent to induce and did

induce its customers to infringe the '689 patent under 35 U.S.C. § 271(b), by, for example,

causing its customers to use the Accused Products in a manner that constitutes direct

infringement of at least Claim 1 of the '689 patent during the term of the '689 patent, including

by providing marketing materials and instructions for use, such as for example User Manuals /

Quick Start Guides, such as the Predator 2 User Manual (Exhibit C), to its customers that instruct

its customers to perform a method of using the Accused Product that infringes at least Claim 1 of

the '689 patent.

48.     Powerteq's actions constitute willful and intentional infringement of the '689

patent.  Powerteq induced infringement of the '689 patent with reckless disregard of Definitive

Holdings' patent rights. Powerteq knew of the '689 patent by, for example, receiving written

notice of it on or about January 18, 2018.  After obtaining knowledge of the '689 patent,

Powerteq continued to sell the Accused Products and instruct its customers to use the Accused

Products via a method that infringes the '689 patent.  Powerteq knew, or it was so obvious that

Powerteq should have known, that the actions it induced its customers to take constituted acts of

infringement of the '689 patent.

49.     Definitive Holdings has been damaged by Powerteq's infringing activities in an

amount to be determined at trial, but in no event less than a reasonable royalty for its sales of

Accused Devices.

## Count III – Contributory Infringement of the '689 Patent

50.     Definitive Holdings restates and incorporates herein each of the paragraphs above as if alleged herein.

51.     Powerteq has contributed to the infringement of the '689 patent under 35 U.S.C. § 271(c) by, for example, offering for sale, selling, and/or importing the Accused Products for use in practicing the patented process of the '689 patent, where each Accused Product constitutes a material part of the invention, and is not a staple article or commodity of commerce suitable for substantial non-infringing use, and is known by Powerteq to be especially adapted for use in an infringement of the '689 patent. As a result, the Accused Products have been used by Powerteq's customers and users in a manner that directly infringes at least claim 1 of the '689 patent, as set forth, for example, in paragraphs 32 through 40 above, which are incorporated as if fully set forth herein.

52.     Upon information and belief, Powerteq had actual knowledge of the '689 patent prior to the filing of this Complaint for at least the reasons set forth in Paragraph 45 above, which is incorporated as if fully set forth herein.

53.     Upon information and belief, Powerteq knew that selling the Accused Products would lead to direct infringement of the '689 patent by its customers. For example, on information and belief, Powerteq provides a User Manual / Quick Start Guide, such as that set forth in Exhibit C, to its customers with the Accused Products, which instruct the customer to perform a method of using the Accused Product that would constitute direct infringement of at least Claim 1 of the '689 patent.

54. Powerteq's actions constitute willful and intentional infringement of the '689 patent. Powerteq contributed to the infringement of the '689 patent with reckless disregard for Definitive Holdings' patent rights. Powerteq knew of the '689 patent by, for example, receiving written notice of it on or about January 18, 2018. After obtaining knowledge of the '689 patent, Powerteq continued to sell the Accused Products knowing that its customers' use of the Accused Products via the method described in, for example, Exhibit C would constitute infringement of the '689 patent. Powerteq knew that the Accused Products have no other substantial non-infringing uses.

55. Definitive Holdings has been damaged by Powerteq's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty for its sales of Accused Devices.

## DEMAND FOR JURY TRIAL

56. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Definitive Holdings requests a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Definitive Holdings requests the following relief:

57. A judgment in favor of Definitive Holdings that Powerteq has directly infringed one or more claims the '689 patent;

58. A judgment in favor of Definitive Holdings that Powerteq's direct infringement of the '689 patent has been willful;

59. A judgment in favor of Definitive Holdings that Powerteq has induced the infringement of one or more claims the '689 patent;

60. A judgment in favor of Definitive Holdings that Powerteq's inducement of the infringement of the '689 patent has been willful;

61. A judgment in favor of Definitive Holdings that Powerteq has contributed to the infringement of one or more claims of the '689 patent;

62. A judgment in favor of Definitive Holdings that Powerteq's contributory infringement of the '689 patent has been willful;

63. A ruling that this case is "exceptional" under 35 U.S.C. § 285;

64. A judgment and order requiring Powerteq to pay Definitive Holdings' damages adequate to compensate for infringement under 35 U.S.C. § 284, which damages in no event shall be less than a reasonable royalty for the use made of the inventions of the '689 patent, including supplemental damages for any continuing post-verdict infringement up until the entry of judgment, with an accounting, as needed, pre- and post-judgment interest and costs, including expenses and disbursements.

65. A judgment and order requiring Powerteq to pay Definitive Holdings treble damages for willful infringement under 35 U.S.C. § 285; and

66. Any and all such further necessary relief as the Court may deem just and proper.

Dated this 29th day of October, 2018.

WASATCH-IP, A PROFESSIONAL CORP.

By:     /s/ Charles L. Roberts
        Charles L. Roberts (5137)
        2825 E. Cottonwood Parkway, Suite 500
        Salt Lake City, UT  84121
        Telephone: (801) 292-5300
        E-mail: croberts@wasatch-ip.com

*Attorney for Definitive Holdings, LLC*